■ In the Matter of NIAGARA MOHAWK POWER CORPORATION, Appellant, v TOWN OF BETHLEHEM ASSESSOR et al., Respondents. [639 NYS2d 492] —Spain, J.

Petitioner challenges, as excessive, the tax assessments for 1990, 1991 and 1992 at its electrical generating plant located in the Town of Bethlehem, Albany County, known as the Albany Steam Station (hereinafter the plant), which has been in operation since 1952. During a trial conducted by a court-appointed Referee, both parties submitted appraisal reports of the property excluding the value of the land; the parties had stipulated to the value of the land and to the equalization rate. In his report to Supreme Court, the Referee recommended the dismissal of each of the three petitions; his recommendation was based upon his conclusion that petitioner's appraisal should be stricken because it utilized an erroneous method of valuation. Alternatively, the Referee concluded that, even if petitioner's appraisal was not stricken because of its erroneous valuation methodology, it should still be stricken because of the omission of verifiable data supporting different aspects of the appraisal. The Referee further concluded that, because of the deficiencies in petitioner's appraisal and because of other substantial evidentiary deficiencies in meeting its burden of proof, petitioner failed to establish a prima facie case of overvaluation. Supreme Court denied petitioner's motion for an order rejecting the Referee's report and for a new trial, and instead granted respondents' cross motion to confirm the Referee's report. Petitioner appeals.

We affirm. Initially, it is clear that the Referee committed error in concluding that petitioner's appraiser utilized an improper valuation methodology. The Referee incorrectly relied on outdated regulations which mandated using only the replacement cost method for local government valuation procedures (see, 9 NYCRR 186-16.5 [a], as amended and renum on May 18, 1994).[1] The amended regulations offer a wide variety of acceptable valuation methods including the method utilized by petitioner's appraiser, to wit: reproduction cost new less depreciation (see, 9 NYCRR 186-16.5 [a]). Furthermore, the property in question, as "specialty property" (see, Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356-357), "must be assessed using the reproduction-cost-new-less-depreciation method of assessment" (Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, 202 AD2d 32, 37, lv denied 85 NY2d 809). Therefore, the valuation methodology utilized by petitioner's appraiser was correct. However, it is our view that despite

1. The case was finally submitted for determination on June 20, 1994; the Referee's report is dated July 26, 1994.

the Referee's error with respect to the appropriate appraisal methodology, there is ample evidence in the record to support his rejection of petitioner's appraisal and his conclusion that petitioner failed to establish a prima facie case.

Under 22 NYCRR 202.59, appraisal reports utilized in tax assessment review proceedings "shall contain a statement of the method of appraisal relied on and the conclusions as to value reached by the expert, together with the facts, figures and calculations by which the conclusions were reached" (22 NYCRR 202.59 [g] [2]). "[T]he submission of an appraisal without ascertainable or verifiable data supporting the appraiser's conclusions of value constitute[s] a violation of 22 NYCRR 202.59 (g) (2) * * *. In view of the appraiser's failure to comply with this provision, the trial court [will] not err in striking the appraisal" (*Matter of Orange & Rockland Utils. v Williams*, 187 AD2d 595, 596). The reasoning behind this rule is that a failure to disclose such facts and source materials at the appraisal stage will effectively deny opposing counsel the opportunity to adequately prepare for cross-examination (*see, Matter of White Plains Props. Corp. v Tax Assessor of City of White Plains*, 58 AD2d 871, *affd* 44 NY2d 971).

Petitioner's appraiser, in calculating the original cost of construction, deducted certain costs (in addition to indirect costs), including personal property and environmental property. The Referee found these deductions to be in error because the appraisal did not contain the underlying data supporting them; the appraiser simply relied on petitioner's characterization of these items. Petitioner does not dispute that its appraiser did not include in his appraisal the facts underlying the designation of certain property as "personal property" or "environmental property"; because it did not contain any information as to the specific items of personal or environmental property, petitioner's appraisal report, as to these figures, was in violation of 22 NYCRR 202.59 (g) (2).

Other omissions were noted by the Referee with respect to the calculation of depreciation. First, the Referee correctly found that the appraiser's $1,000,000 deduction from the demolition costs was unsupported by any information contained in the appraisal; petitioner does not contest this finding. The Referee also found that reports allegedly used by the appraiser in determining the costs of asbestos removal and excess fuel and labor costs, referred to as the Entek report and Appendix G of the Bechtel Option Screening, respectively, were improperly omitted from the appraisal. As to the Entek report, although petitioner accurately asserts that it was admitted into

evidence, that fact does not ameliorate its absence from the appraisal report (see, Matter of Orange & Rockland Utils. v Williams, supra, at 596; Matter of State of New York v Town of Thurman, 183 AD2d 264, 268; see also, 22 NYCRR 202.59 [h]). Notably, the Bechtel Option Screening was part of the appraisal report of respondents' appraiser and, as such, was properly before Supreme Court in reviewing the appraisal report of petitioner (see, Matter of Buffalo Hotel Dev. Venture v Tanzella, 184 AD2d 1030, 1030-1031). The Referee also correctly found that a study, requested by petitioner's appraiser and conducted by petitioner, with respect to the elimination of operating personnel if petitioner were to replace the existing plant with a modern facility, was improperly omitted from the appraisal report; even though its findings were summarized, that omission also violated 22 NYCRR 202.59 (g) (2).

In addition to the omission of facts and studies underlying specific aspects of the appraisal report, the Referee also found various evidentiary deficiencies. First, the Referee determined that petitioner's appraiser erroneously relied on the Handy-Whitman Index of Public Utility Construction Costs in trending the vintage costs to determine the reproduction cost new. The Referee properly found that the appraiser incorrectly utilized this index in this proceeding because, among other things, it does not include indirect costs. The Referee also correctly found that the index was not applicable because it reflected only average national trends and not necessarily local trends. Notably, petitioner's appraiser testified that he did not know whether the trends recited in the index applied to the Bethlehem area; he also indicated that he did not check local experience.

The Referee also found that petitioner's appraiser's use of the retirement date was in error. In calculating the incurable physical depreciation of the property, petitioner's appraiser first did an analysis of petitioner's "historical retirement experience for each of the various classes of property" which are located at the plant to determine "the life expectancy of the interim retirements between the date [the] property went into service and its expected retirement date". Next, he determined the retirement date of the plant to be December 31, 1999, and the net salvage that would be realized at the end of the life of the plant. Again, the Referee properly found various evidentiary deficiencies in these calculations, to wit: (1) the retirement date took into account only the condition of the entire plant and not any particular property being evaluated, (2) the age-life used by the appraiser was based on his judgment that

the facility would be identical to a study of other plants system-wide, and (3) the retirements represent the most severe resource need scenario facing petitioner.

Additionally, regarding the retirement date, it is uncontested that the appraiser did not analyze individual components of the plant other than the generating units and that he based his determination, in part, on an analysis of petitioner's properties other than the Bethlehem property. While it may have been nearly impossible for the appraiser to determine the life expectancy of each specific unit of the plant (see, Matter of Onondaga County Water Dist. v Board of Assessors, 67 Misc 2d 797, 801), because his analysis did not focus on individual components of the property, its accuracy is suspect (see, Appraisal Institute, The Appraisal of Real Estate, at 350-352 [10th ed] [explaining incurable physical deterioration as based on the depreciation of components of the property]). Furthermore, inasmuch as the Deloitte, Haskins report also diverted the inquiry away from the actual components of the plant by focusing on other properties, the Referee properly found the appraiser's reliance on that report to be erroneous.

Finally, in determining the curable physical depreciation, petitioner's appraiser deducted the cost of removal of asbestos from the plant. The Referee correctly determined that the appraiser's findings were overstated because they made no distinction between "the cost of removing incurable asbestos as distinct from asbestos that had already been cured by encapsulation".

In light of the various omissions of "facts, figures and calculations" supporting petitioner's appraisal (see, 22 NYCRR 202.59 [g] [2]), the Referee had sufficient basis to strike petitioner's appraisal (see, Matter of Orange & Rockland Utils. v Williams, 187 AD2d 595, 596, supra). However, even if the appraisal had not been stricken, it is our view that the Referee correctly concluded that petitioner failed to establish a prima facie case (see, supra, at 596; cf., Matter of Welch Foods v Town of Portland, 187 AD2d 948).[2] There is a presumption of validity of a tax assessment (see, Farash v Smith, 59 NY2d 952, 955), which "disappears and may not be considered in weighing the

---

2. Although we do not have to reach the sufficiency of respondents' proof, petitioner's assertions regarding the methodology used by respondents' appraiser have merit. The most significant flaw in respondents' appraisal report is that it utilizes the replacement cost new less depreciation method, which is an incorrect method by which to appraise a specialty property such as petitioner's (see, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, 202 AD2d 32, 37, supra).

evidence when the taxpayer presents sufficient evidence to make out a prima facie case that the assessment is erroneous * * *. When the taxpayer's proof is inadequate, however, the presumption remains in effect" (*Matter of State of New York v Town of Thurman*, 183 AD2d 264, 266, *supra*). The record, including the nonappraisal proof, supports Supreme Court's determination that petitioner did not meet the substantial evidence burden of proof necessary to overcome the presumption of the validity of the assessments in question (*cf.*, *Matter of Welch Foods v Town of Portland*, *supra*, at 948-949).

We have considered petitioner's remaining contentions and find them to be without merit.

Mercure, J. P., White and Peters, JJ., concur. Ordered that the order is affirmed, without costs.